# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. JONATHAN GUSDORFF, | CIVIL ACTION |
| Plaintiff, Counter-Defendant, | |
| | No. 18-652 |
| v. | |
| MNR INDUSTRIES, LLC and MNR PENNSYLVANIA, LLC, | |
| Defendants, Counter-Claimants, | |
| v. | |
| GUSDORFF HOLDINGS, LLC, | |
| Additional Counter-Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                        **JULY 6, 2018**

      Plaintiff/Counter-Defendant Dr. Jonathan Gusdorff ("Dr. Gusdorff") filed suit on January 17, 2018, in the Philadelphia Court of Common Pleas. (Doc. No. 1, Ex. A-1.) On February 14, 2018, the case was removed to this Court. (*Id.*) Dr. Gusdorff filed a First Amended Complaint on March 5, 2018, against Defendant/Counter-Claimant MNR Industries, LLC ("MNR Industries") and MNR Pennsylvania, LLC (collectively "MNR"). (Doc. No. 4.)

      In his First Amended Complaint, Dr. Gusdorff alleges breach of contract against MNR with respect to a Stock and Membership Interest Purchase Agreement ("Purchase Agreement") for the sale of Main Line Urgent Care Medical Group, P.C. ("MLUC"). (Am. Compl. ¶¶ 40–41, 67–78.) On April 13, 2018, MNR filed an Answer, Affirmative Defenses, and Amended

Counterclaims. (Doc. No. 9.) MNR's counterclaims allege breach of contract and fraud against Dr. Gusdorff and Gusdorff Holdings, LLC ("Gusdorff Holdings") (collectively "Counter-Defendants"). (Am. Countercls. ¶¶ 21–33.)

Presently before the Court is Counter-Defendants' Motion to Dismiss Amended Counterclaims Pursuant to Rules 12(b)(6) and 9(b) (Doc. No. 11) and MNR Industries' Memorandum of Law in Opposition (Doc. No. 12). For the reasons noted below, Counter-Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND[1]

MNR entered into the Purchase Agreement with Counter-Defendants on or about January 15, 2015. (Am. Countercls. ¶10.) MNR acquired 100 percent of the issued and outstanding capital stock of MLUC and 100 percent of the membership interest in Gusdorff Holdings. (*Id.*) In the Purchase Agreement, Counter-Defendants expressly represented and warranted that:

> [MLUC] is participating in or otherwise authorized to receive reimbursement from Medicare and Medicaid and is a party to other third-party payor agreements as set forth on Schedule 4.17(b). All necessary certifications and contracts required for participation in such programs are in full force and effect and have not been amended or otherwise modified, rescinded, revoked, or assigned, and to the knowledge of [MLUC] and Dr. Gusdorff, no condition exists or event has occurred that in and of itself or with the giving of notice or the lapse of time or both would result in the suspension, revocation, impairment, forfeiture, or nonrenewal of any such third-party payor program. [MLUC] is in compliance in all material respects with the requirements of all such third-party payors.

(*Id.* ¶ 12 (quoting Am. Compl., Ex. 1-2, Purchase Agreement § 4.12(b)).) Counter-Defendants also expressly represented and warranted that there was no basis for any "suit, action, proceeding

---

[1] We take the facts alleged in the Amended Counterclaims as true, as we must when deciding a Motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

2

at law or in equity, arbitration, administrative proceeding involving or brought by any third party." (*Id.* ¶ 13.)

MNR allege these representations were false and constitute a breach of the Purchase Agreement by Counter-Defendants. (*Id.* ¶ 14.) According to MNR, MLUC's third-party payor agreements, including such an agreement with Independence Blue Cross, required that a board-certified physician be on site at MLUC facilities at all times. (*Id.* ¶ 15.) MNR assert that Dr. Gusdorff required a physician to be on site "unless there was an illness, family emergency, or no show by a physician." (*Id.* ¶ 16 (quoting Am. Compl. ¶ 54).) As a result, MNR claim there were hundreds of times no physicians were on site. (*Id.* ¶ 17.)

Therefore, MNR contend that Counter-Defendants' representations that "no condition exists . . . that in and of itself . . . would result in the suspension . . . of any such third-party payor program," and that "MLUC is in compliance in all material respects with the requirements of all such third-party payors" were false. (*Id.* ¶ 19 (quoting Am. Compl., Ex. 1-2, Purchase Agreement § 4.17(b)).) Counter-Defendants move to dismiss the Amended Counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (*See generally* Counter-Defs.' Mem. Law in Supp.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them

after construing them in the light most favorable to the non-movant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).  However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.  Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

Likewise, in order to adequately plead fraud under Rule 9(b), a party "must plead with particularity 'the "circumstances" of the alleged fraud in order to place the [other party] on notice of the precise misconduct with which they are charged, and to safeguard the [other party] against spurious charges of immoral and fraudulent behavior.'" *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d. Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).  However, the United States Court of Appeals for the Third Circuit ("Third Circuit") has instructed courts not to focus exclusively on the narrow "particularity requirement," but also to consider the "general simplicity and flexibility contemplated by the rules." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  In the case of corporate fraud, where a party "cannot be expected to have personal knowledge of the details of corporate internal affairs," a party may "accompany their allegations with facts indicating why the charges against [another party] are not baseless and why additional information lies

4

exclusively within defendants' control." *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (quoting *Craftmatic*, 890 F.2d at 646).

## III. DISCUSSION

Counter-Defendants argue: (1) MNR's amended counterclaim for breach of contract must be dismissed for failure to state a claim; (2) MNR's amended counterclaim for fraud must be dismissed because it fails to sufficiently meet the pleading requirements of Rule 9(b); and (3) MNR's amended counterclaim for fraud is barred by the gist of the action doctrine and economic loss doctrine.

### A. MNR Properly Pleaded an Amended Counterclaim for Breach of Contract.

Under Pennsylvania law, in order to properly plead a claim for breach of contract, a party must allege "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."[2] *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2013 WL 5636618, at *3 (E.D. Pa. Oct. 11, 2013) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)). Counter-Defendants argue that MNR have not stated a claim for breach of contract. (Counter-Defs.' Mem. Law in Supp. 6–8.) In particular, they claim MNR have failed to plead that there was a breach of any duty owed by Counter-Defendants under the terms of the Purchase Agreement and that MNR have not suffered any damages. (*Id.*)

In their Amended Counterclaims, MNR assert Counter-Defendants made specific representations in Section 4.17 of the Purchase Agreement, including that MLUC was "in compliance in all material respects with the requirements of [its] third-party payors" and that there was no basis for any "suit, action, proceeding at law or in equity, arbitration, administrative

---

[2] In an action based on diversity of citizenship, a federal court generally applies the choice of law of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Electr. Mfg. Co.*, 313 U.S. 487, 497 (1941); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).

5

proceeding involving or brought by any third party." (Am. Countercls. ¶¶ 23, 24 (quoting Am. Compl., Ex. 1-2, Purchase Agreement § 4.12(b)).) According to MNR, a third-party payor agreement with Independence Blue Cross required MLUC to have a board-certified physician be on site at all times. (Am. Countercls. ¶ 15.) However, under the ownership of Counter-Defendants, MLUC allegedly did not always have such a physician on site. (Am. Countercls. ¶¶ 16–19.) To support this argument, MNR note that Dr. Gusdorff admitted in his Amended Complaint that a physician was on site at all times, "**unless there was an illness, family emergency or no-show**." (*Id.* ¶ 16 (emphasis added) (quoting Am. Compl. ¶ 54).)

By not having a physician on site at all times, MNR argue that MLUC was not in compliance in all material respects with the requirements of the Independence Blue Cross third-party payor agreement, despite Counter-Defendants' representations. Therefore, Counter-Defendants allegedly breached their duty under the Purchase Agreement.

Counter-Defendants argue that MLUC was not in "material breach" of its third-party payor agreement with Independence Blue Cross and, therefore, not in breach of their duty under the Purchase Agreement. (Counter-Defs.' Mem. Law in Supp. 7–8.) However, since we must construe all allegations in a light most favorable to MNR, we find that MNR have shown enough facts, including Dr. Gusdorff's own admission that a physician was not always on site, to demonstrate a possible breach of duty. *See Davis*, 824 F.3d at 341. Therefore, Counter-Defendants' argument here is not appropriate at this time, and MNR have adequately pleaded the breach of duty element of a breach of contract claim.

Finally, MNR claim that because Counter-Defendants' representations and warranties on this issue were false, MNR ultimately overpaid for MLUC and suffered lost profits. (Am. Countercls. ¶ 25.) Counter-Defendants argue that this claim does not satisfy the damages

element and is merely a legal conclusion. (Counter-Defs.' Mem. Law in Supp. 8.) However, Counter-Defendants provide no support, legal or otherwise, as to why overpayment and lost profits are insufficient damages in a breach of contract claim. *But see Brisbin v. Super. Valve Co.*, 398 F.3d 279, 289 (3d. Cir. 2005) (quoting *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 680 (3d Cir. 1991)) ("Lost profits may be recovered under Pennsylvania law if (1) 'there is . . . evidence to establish the damages with reasonable certainty,' (2) the damages 'were the proximate consequence of the wrong,' and (3) the damages 'were reasonably foreseeable.'"); *Delavau, LLC v. J.M. Huber Corp.*, No. 17-4005, 2017 WL 6525780, at *2–3 (E.D. Pa. Dec. 21, 2017); *Oates v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 620, 623 (E.D. Pa. 2012);

We find that MNR has adequately pleaded a claim for breach of contract. Accordingly, Counter-Defendants' Motion to Dismiss as it relates to Count I of MNR's Amended Counterclaims is denied.

### B. MNR's Amended Counterclaim for Fraud is Preempted

Under Pennsylvania common law, a cause of action for fraud must contain: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs. v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). MNR assert that Counter-Defendants knowingly and intentionally made misrepresentations and lied by stating that MLUC was in compliance with all of its legal obligations and that there was no basis for any lawsuit against them. (Am. Countercls. ¶¶ 30–31.) Further, MNR claims that Counter-Defendants withheld material facts in order to facilitate the purchase of MLUC. (*Id.* ¶ 32.)

Counter-Defendants argue MNR's fraud claim is barred by the "economic loss doctrine" and the "gist of the action doctrine." (Counter-Defs.' Mem. Law in Supp. 8–12.)

        **1.** *Economic Loss Doctrine*

The economic loss doctrine prevents a party from recovering in tort an entitlement that "flows only from a contract." *See Air Prods. & Chems., Inc. v. Eaton Metal Prods., Co.*, 256 F. Supp. 2d 329, 335 (E.D. Pa. 2003) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 619 (3d Cir. 1995)). Though the Pennsylvania Supreme Court has not addressed the issue, the Third Circuit has predicted that the Pennsylvania court would most likely apply the economic loss doctrine to claims of intentional fraud. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675–81 (3d Cir. 2002). In *Werwinski*, the Third Circuit also created an exception for applying the economic loss doctrine to bar "fraud-in-the-inducement claims if the fraud is extraneous to the contract and not interwoven with the breach of contract." *Air Prods.*, 256 F. Supp. 2d at 337 (quoting *Foster v. Northwestern Mut. Life*, No. 02-2211, 2002 WL 31991114, at *2 (E.D. Pa. July 29, 2002)); *see also Werwinski*, 286 F.3d at 676. The Third Circuit acknowledged that fraud in the inducement "presents a special situation where parties to a contract negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Werwinski*, 286 F.3d at 676 (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).

However, this is a narrow exception and courts must determine if the claims at issue arise independently of the underlying contract. *See Huron Tool*, 532 N.W.2d at 545 (citing *Pub. Serv. Enter. Grp., Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 201 (D.N.J. 1989)). Parties generally

have a remedy in contract for misrepresentations regarding the subject matter of the contract. "[C]laims arise independently of the contract when they do not 'relate to the quality or characteristics of the [subject matter].'" *Air Prods.*, 256 F. Supp. 2d at 337 (quoting *Werwinski*, 286 F.3d at 676).

The court in *Air Products* was faced with a particular factual scenario that aptly illustrates the "fine line" between claims intertwined with the contract and those collateral to the contract. There, plaintiff contracted with defendant for defendant to produce "code compliant pressure vessels." *Id.* at 338. In order to produce these vessels, defendant needed to have a specific certification. *Id.* Yet, despite its assurances to plaintiff, defendant did not have the proper certification. *Id.* The court found that this fraudulent misrepresentation by defendant was independent from the substance of the contract. *Id.* The court explained that by stating it had the proper certification, defendant was misrepresenting *its own ability* to produce the specific "code compliant" vessel, rather than whether the vessels themselves were "code compliant." *Id.* 338–39.

The *Air Products* court highlighted this distinction by positing a hypothetical scenario where the defendant, actually having the necessary certification to make a code compliant vessel, instead chose to manufacture non-code compliant vessels and misrepresent them to plaintiff as "code compliant." *Id.* Clearly, in the hypothetical scenario, the defendant would have been misrepresenting the quality or character of the goods subject to the contract, whereas in the actual case, the defendant was misrepresenting its own ability to produce the goods. *Id.* ("In [the hypothetical scenario], it would be clear that any fraud claim would be barred by *Werwinski*'s rendition of the economic loss doctrine.")

9

In the fraud claim at issue in the present case, MNR assert that Counter-Defendants fraudulently misrepresented the compliance and liability exposure of MLUC. Since the Purchase Agreement concerned the sale of MLUC, Counter-Defendants' alleged misrepresentations directly concerned the quality or character of the subject of the underlying contract. Therefore, MNR's fraud claim is interwoven with the breach of contract claim and barred by the economic loss doctrine.

However, MNR challenges that *Werwinski* is no longer valid precedent in this Circuit. (Counter-Claimant's Mem. Law in Opp'n 9.) MNR argues that since the Third Circuit issued its prediction of how the Supreme Court of Pennsylvania would apply the economic loss doctrine, the Pennsylvania Superior Court has disagreed and narrowed the focus of the doctrine. In *Knight v. Springfield Hyundai*, the Superior Court held that the economic loss doctrine is inapplicable and does not operate as a bar to claims brought under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 81 A.3d 940, 951–52 (Pa. Super. Ct. 2013); (Counter-Claimant's Mem. Law in Opp'n at 9, n.1.) We are not persuaded by this argument for the following reasons.

First, the plaintiff in *Knight* brought a claim under the UTPCPL. *See Knight*, 81 A.3d at 943. In its discussion of the UTPCPL claim, the *Knight* court expressly held that "the claims at issue . . . are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims." *Id.* at 952; *see also Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 411 (E.D. Pa. 2016). However, *Werwinski* addressed the applicability of the economic loss doctrine related to claims under the UTPCPL, as well as common law fraudulent concealment. *See Werwinski*, 286 F.3d at 670 (reviewing district court's application of economic loss doctrine

to fraudulent concealment and UTPCPL claims). Since MNR do not bring any counterclaims under the UTPCPL, *Knight* is not applicable.

Second, this Court is of the position that, in general, "[t]he Third Circuit's prediction of how Pennsylvania's highest court will rule carries authority independent of intermediate state court's decisions." *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (quoting *Cohen v. Am. Int'l Ins. Co.*, No. 95-5243, 1996 WL 103793, at *3 (E.D. Pa. March 7, 1996)). Several district courts have continued to apply *Werwinski*, despite the Superior Court's decision in *Knight*.[3] *See, e.g.*, *McGuckin*, 118 F. Supp. 3d at 720–21, *Moore v. State Farm Fire & Cas. Co.*, No. 14-3113, 2015 WL 463943, at *2 (E.D. Pa. Feb 4, 2015), *and Vaughn v. State Farm Fire & Cas. Co.*, No. 14-1684, 2014 WL 6865896, at *4 (E.D. Pa. Dec. 3, 2014). Following *Knight*, the Pennsylvania Superior Court recognized the "tension" between the two holdings and agrees that the federal district courts are still bound by *Werwinski*. *See Dixon v. Nw. Mut.*, 146 A.3d 780, 790, n.12 (Pa. Super. Ct. 2016) ("This split in authority means that state and federal courts in this Commonwealth follow different substantive rules in considering claims advanced under the UTPCPL.").

Therefore, we will apply the economic loss doctrine as provided in *Werwinski* until either the Third Circuit revises its prediction or the Supreme Court of Pennsylvania addresses the issue. We find MNR's amended counterclaim for fraud is barred by the economic loss doctrine and is therefore dismissed.

---

[3] However, some district courts in the Third Circuit have decided to follow *Knight*. *See, e.g.*, Kantor *v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 426–27 (E.D. Pa. 2015) (deciding that since an intermediate state court has ruled, the Third Circuit holding is merely persuasive); *Horne v. Progressive Advanced Ins. Co.*, No. 15-1029, 2015 WL 1875970, at n.1 (E.D. Pa. April 24, 2015) (finding that because of uncertainties in law, law must be construed in Plaintiff's favor); *Roberts v. NVR, Inc.*, No. 15-489, 2015 WL 3745178, at *5–6 (E.D. Pa. June 15, 2015).

## 2.    *Gist of the Action Doctrine*

While we can dismiss MNR's amended counterclaim for fraud based on the economic loss doctrine, we will also quickly address Counter-Defendants' argument that the fraud counterclaim should be dismissed under the gist of the action doctrine.  The analysis for the gist of action doctrine is similar to the economic loss doctrine.  *See eToll v. Elias/Savion Advert., Inc.*, 811 A.2d 10, n.11 (Pa. Super. Ct. 2002) ("The *Werwinski* court also noted that . . . courts should generally select the narrower path which limits liability rather than expands it.  We find this general line of reasoning persuasive in the context of the gist of the action doctrine as well.").  To determine whether the gist of the action doctrine applies in this case, we must look at whether the alleged fraud was in the inducement to enter into the Purchase Agreement or in its performance.  *See Id.* at 20 ("[T]he gist of the action doctrine should apply to claims for fraud in the performance of a contract."); *see also Air Prods.*, 256 F. Supp. 2d at 341 ("The distinction between fraud in the inducement and fraud in the performance claims . . . is crucial.").

After it conducted a thorough review of federal decisions within the Third Circuit, the *eToll* court held that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.  *eToll*, 811 A.2d at 14.  Under the *eToll* test, it is clear that the alleged fraud in this case arose solely from the Purchase Agreement where the duty to represent and warrant the characteristics of the company was created and grounded.  Additionally, the fraud counterclaim essentially duplicates the breach of contract counterclaim and is wholly dependent

on the terms of the contract. Therefore, MNR's amended counterclaim for fraud is barred by the gist of the action doctrine as well.

Accordingly, Counter-Defendants' Motion to Dismiss as it relates to Count II of MNR's Amended Counterclaims is granted.

## IV. CONCLUSION

Based on the foregoing reasons, Counter-Defendants' Motion to Dismiss Amended Counterclaims is denied as to Count I and granted as to Count II.

An appropriate Order follows.